**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| IKON WEAPONS, LLC | ) | |
| | ) | Case No. 22-10507 |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| PALMETTO STATE ARMORY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | ADV. PRO. NO 22-02021 |
| | ) | |
| v | ) | |
| | ) | |
| IKON WEAPONS, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANT'S POST-HEARING MEMORANDUM OF LAW

**NOW COMES** Defendant, and debtor in possession, Ikon Weapons, LLC, ("Debtor") and per the Court's direction following the October 20, 2022 hearing, hereby submits the following *DEFENDANT'S POST-HEARING MEMORANDUM OF LAW* concerning that certain *Motion for Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction* filed by Palmetto State Armory, LLC ("PSA") in this adversary proceeding on September 21, 2022 [Doc. 2] (the "Motion"). The Debtor respectfully shows unto the Court as follows:

### PRELIMINARY STATEMENT

Equitable liens and constructive trusts have been held to be disfavored by courts because their creation potentially alters the priority scheme under the Bankruptcy Code. *See U.S. v. Noland*, 517 U.S. 535, 116 S. Ct. 1524, 134 L. Ed. 2d 748 (1996); *In re 222 South Caldwell Street,*

*Ltd. Partnership*, 409 B.R. 770 (Bankr. W.D.N.C. 2009); *Day Care-Sam Furr, LLC v. McKinnell (In re Ross)*, 478 B.R. 715, 731 (Bankr. W.D.N.C. 2012) *Kunkel v. Ries (In re Morken)*, 199 B.R. 940, 965 (Bankr. D. Minn. 1996); *In re Grubb & Ellis Co*, 2012 Bankr. LEXIS 1279 (Bankr. S.D.N.Y. 2012).  Plaintiff, Palmetto State Armory, LLC, seeks certain injunctive relief regarding the Debtor's Inventory[1] and other assets, but it cannot establish the requisite elements necessary for such relief.  During the October 20, 2022 hearing, PSA failed to identify within the Inventory any or specific *res* or items for which it contracted with the Debtor.  Moreover, PSA failed to employ the lowest intermediary balance rule when purportedly completing its tracing analysis. *See In re Dameron*. 155 F.3d 718, 724 (4th Cir. 1998).  Further, PSA faces no irreparable harm as it has a clearly available monetary remedy as provided in the June 16, 2021 Purchase Agreement and the June 2022 demand letter.  Because of these facts, the Debtor, continues to dispute that PSA is entitled to any constructive trust or injunction.  However,  herein, per the Court's instruction, the Debtor assumes *arguendo* that such relief may be granted and addresses the four distinct questions raised by the Court at the October 20, 2022 hearing.

## QUESTIONS PRESENTED

**Questions 1 & 3:**    *When Does a Constructive Trust Arise Under N.C. Law? Is it Subject to the Interest of a Judicial Lien Creditor?*

**Answer:  While a *claim* for relief that may warrant a constructive trust as a remedy arises when the underlying wrong is committed, N.C. law provides no elevated status for such a claim that would place it ahead of another pre-existing docketed judgment.**

Under North Carolina law, "[a] constructive trust is not [explicitly] a trust" nor a separate claim "[it] is actually a *remedy* recognized by the courts to prevent unjust enrichment and to rectify

---

[1] As used herein, the term "Inventory" has the same meaning as the term "Subject Property" as defined in the *Defendant's Brief in Response to Plaintiff's Motion* filed in this action on October 17, 2022 [AP No. 20].

a fraud." 2 Webster's Real Estate Law in North Carolina § 28.01 (2022)(emphasis added).  As the

North Carolina Supreme Court observed in *Roper v. Edwards,*  a constructive trust:

> belies its name, for no ongoing trust relationship is created when a
> court imposes a constructive trust.
>
> [T]he constructive trust plaintiff wins an *in personam* order that
> requires the defendant to transfer specific property in some form to
> the plaintiff. When the court decides that the defendant is obliged to
> make restitution, it first declares him to be constructive trustee, and
> then orders him[,] as trustee, to make a transfer of the property to
> the beneficiary of the constructive trust, the plaintiff.

*Roper v. Edwards*, 323 N.C. 461, 464, 373 S.E.2d 423, 425 (1988).  "Actions to enforce

constructive or resulting trusts are based on the original wrongful or tortious act of the person

holding title, by reason of which equity impresses a trust upon his title. No contract relation exists.

A cause of action arises when the wrong is committed."  *Teachey v. Gurley*, 214 N.C. 288, 293-

94, 199 S.E. 83, 87 (1938).  A claim that supports a constructive  trust remedy "arises *when one*

*obtains the legal title* to property in violation of a *duty* he owes to another."  *Fulp v. Fulp*, 264

N.C. 20, 22, 140 S.E.2d 708, 711 (1965)(emphasis added).

   "A parol trust arising as either a constructive trust or a resulting trust must be proved by

clear, strong and convincing proof, a mere preponderance of evidence not being sufficient."  2

Webster's Real Estate Law in North Carolina at § 28.05.  "The burden of establishing the existence

of the constructive trust rests on the claimant, as does the burden of identifying or tracing the trust

property." *See also Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 436 (5th Cir.

1994).  Generally, constructive trusts "do not come within the purview of the recordation statutes

and protection is given to the interests of such trust beneficiaries against everyone who cannot

qualify as a bona fide purchaser for value." 2 Webster's Real Estate Law in North Carolina *at* §

28.06.

The undersigned could locate no North Carolina case or statute that appears to control in a situation where a creditor with a prior docketed judgment is pitted against a litigant who brings a claim seeking a judgment remedy of constructive trust in the same property. Generally speaking, regarding real estate, it is well established under North Carolina law, that a prior docketed judgment primes a later recorded judgment, and in the case of personal property, the first to levy is first in right. "Pursuant to [North Carolina General Statutes] section 1-234, a judgment lien is perfected upon its docketing in a county in which the debtor owns real property. The judgment lien not only attaches to real property owned by the debtor at the time the judgment is docketed, but also to real property the debtor acquires after the date of docketing." *Martin v. Roberts*, 177 N.C. App. 415, 418, 628 S.E.2d 812, 814 (2006). A judgment lien only attaches on personal property "upon levy of execution." *Hassell v. First Pa. Bank, N.A.*, 41 N.C. App. 296, 299, 254 S.E.2d 768, 770 (1979); *See also* N.C.G.S. § 1-313(1)("No Lien on Personal Property until Levy").

No North Carolina case or statute seems to alter these general principals or give a party *seeking* an equitable trust judgment any priority over one who *already holds* a docketed judgment (or over a bankruptcy trustee who is bestowed with such status by operation of 11 U.S.C. 544(a)(1)) and thereby has rights in the same assets. In fact, indications are to the contrary. For example, the North Carolina Supreme Court has held that, like purchasers for value, judgment creditors, "could rely on the record and under the recording statutes be entitled to priority over an equity interest in the property not reflected in the record." *Arnette v. Morgan*, 88 N.C. App. 458, 460-61, 363 S.E.2d 678, 680 (1988)(citing *Lowery v. Wilson*, 214 N.C. 800, 200 S.E. 861 (1939). "Specifically, the Court in *Lowery*, applying the recording statutes, found a mortgage could not be reformed so as to affect the holder of a recorded judgment which accrued subsequent to the date of the mortgage but before the requested reformation of the mortgage." *Id.*

4

Admittedly, in some other limited circumstances, the Court has allowed equitable reformation of deeds against several judgment creditors. For example, the Court allowed reformation of a deed that related back to the original conveyance when it found the debtor was holding the property as trustee for himself and three other persons even though the agreement was not reflected in the record. *See Crossett v. McQueen*, 205 N.C. 48, 169 S.E. 829 (1933), In *Hice v. Hi-Mil, In*c., 301 N.C. 647, 273 S.E. 2d 268 (1981), the Court allowed reformation of a deed so as to provide an unrecorded equity interest priority over a subsequent purchaser with a recorded deed. However, the Court further held that if the purchaser had no notice of the equity prior to the purchase and if he paid valuable consideration, the purchaser would be given priority over the unrecorded equity interest. *Id*. at 653-54, 273 S.E. 2d at 272.

Beyond these narrow types of situations in which deed reformations were allowed by statute, there appears to be no indication that under North Carolina law, a parol equitable claim prevails over an already docketed judgment or that any treatment different than the basic "first in time, first in right" principle generally applies. As indicated in *Roper*, it is only once a Court determines that a Plaintiff is entitled to such relief that it wins an *in personam* order against the Defendant.  At that time, Defendant becomes a trustee of the property in question until title is restored to Plaintiff. *Roper*, 373 S.E.2d at 425.

This result does not seem to change in the Bankruptcy context. For example, in *In re: Chriscoe*, this Court granted stay relief to a creditor (First National Bank, Corp.) asserting a constructive trust against certain property of the Debtor's estate. *In re Chriscoe*, No 03-12584, 2003 WL 23211566 (Bankr. M.D.N.C. Oct 31, 2003). Key to its decision, the Court noted, was that the property at issue (the Seagrove Property) "was subject to a constructive trust … *when this case was filed* and thus *came into the bankruptcy estate subject to such constructive trust*." *Id.*

(emphasis added); *See also Branch Banking & Tr. Co. v. Rhodes (In re Hayes Iron & Metal, Inc.)*, 2014 Bankr. LEXIS 2301, at *6 n.5 (Bankr. M.D.N.C. May 22, 2014)(explaining that the beneficiary of the constructive trust in *In re Chriscoe* prevailed "because [its] *recorded judgment lien* had priority over the trustee as a [*bona fide* purchaser].")(emphasis added);  *In re Surplus Furniture Liquidators*, 199 B.R. 136, 142 (Bankr. M.D.N.C. 1995)(citing  4 Collier on Bankruptcy P541.13)(Lawrence P. King ed., 15th ed. 1995)("Where the existence of a trust *has been established*, the bankruptcy trustee will be ordered to turn over the property or the proceeds")(emphasis added).

As this Court is aware, in the present case, Plaintiff  PSA presently seeks—*i.e. does not hold as of the petition date*—a  constructive trust judgment as to the Debtor's property.  The Debtor, while recognizing PSA as an unsecured creditor, disputes that PSA is entitled to the relief it seeks.  Assuming *arguendo*, as this Court instructed, that the elements of a constructive trust claim have been met and that a judgment granting such relief may follow, the Debtor can identify no law that would automatically relate such a judgment back to a time, prepetition, or give PSA any superior priority above any pre-existing judgment creditor or a bankruptcy trustee/debtor in possession.

**Question 2: *Is a Constructive Trust Subject to the 11 U.S.C. § 544 Powers of a Bankruptcy Trustee/Debtor-in-Possession?***

**Answer: Yes.**

The question turns on whether section 544(a) of the Bankruptcy Code trumps section 541(d) of the Bankruptcy Code.  As this Court has held, along with the majority of others, § 541 does not defeat the lien rights afforded a trustee/debtor-in-possession under § 544.  See *Branch Banking & Trust Co. v. Rhodes (In re Hayes Iron & Metal, Inc.)*, 2014 Bankr. LEXIS 2301 (Bankr. M.D.N.C. 2014); *Mayer v. United States (In re Reasonover)*, 236 B.R. 219, 227 (Bankr. E.D. Va.

6

1999;) *In re Hearne,* No. 02-81181, 2003 WL 479113 (Bankr. M.D.N.C. Feb. 21, 2003); *In re Surplus Furniture Liquidators of High Point, Inc.*, 199 B.R. 136 (Bankr. M.D.N.C. 1995), I*n re Chriscoe,* No. 03- 12584, 2003 WL 23211566 (Bankr. M.D.N.C. Oct. 31, 2003).

Section 544(a) of the Bankruptcy Code provides that:

> (a)     The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a).

These rights afforded to a trustee under section 544 are conferred on a chapter 11 debtor in possession via section 1107 of the Bankruptcy Code.  Courts have routinely held that estate property under section 541 of the Bankruptcy Code is defined broadly including all legal or equitable interests of the debtor in property as of the commencement of the case." *XL Datacomp v. Wilson (In re Omegas Group)*, 16 F3d 1443, 1448 (6th Cir. 1994).

These are a minority of courts that have concluded that a constructive trust excludes property under section 541(d) of the Bankruptcy Code even over the strong-arm powers afforded

to trustees and debtor-in-possessions. *Id.* at 1449. However, as explained in *In re Omegas Group,* to reach such a conclusion, the minority construct a "legal fiction a common-law remedy in equity that may only exist by the grace of judicial action." *Id.*

With regard to this court specifically, Judge Stocks engaged in a careful review of precedent and held in *Rhodes* that section 544 entitles the debtor to prevail over any constructive trust. Judge Stocks based his ruling on various factors. First, by excluding from section 541(d) the portions under subsection 541(a)(1) and (a)(2), Congress clearly signaled its intention that the trustee's avoidance powers would trump claims based solely on the debtor's lack of equitable title." *Rhodes*, 2014 Bankr. LEXIS at 9. Next, adopting the reasoning in *Mayer v. United States (In re Reasonover)*, 236 B.R. 219, 227 (Bankr. E.D. Va. 1999), this Court concluded that section 544 is not triggered by a transfer of the Debtor or even a transfer generally. *Id.* Rather, section 544 of the Bankruptcy Code implores certain "rights and powers of, or may avoid "any transfer of property of the debtor . . . that is avoidable by . . . a bona fide purchaser of real property . . ." *Id.* Thus, to the extent a bona fide purchaser of value would have acquired value in the subject property being claimed over a constructive trust, then so too does a trustee or debtor-in-possession. *Id.* at 10.

In the present case, it is not altogether clear in which assets of the Debtor, beyond the Inventory, PSA is claiming an equitable constructive trust interest. To the extent that PSA seeks such relief against the Debtor's scheduled real property located at Mt. Gilead and Albemarle, *Rhodes* is directly on all fours. PSA simply cannot prevail against a bankruptcy trustee/debtor-in-possession whom federal law recognizes as a *bona fide* purchaser at the time of the commencement of the case. 11 U.S.C. § 544(a)(3).

Regarding Inventory and personal property of the Debtor the result here is no different. Noted as distinguishable by Judge Stocks in another case, *In re Surplus Furniture Liquidators*, 199 B.R. 136 (Bankr. M.D.N.C. 1995), the Court held that the asserted constructive trust / resulting trust could not defeat a Debtor's objection to sell certain furniture.   In *Surplus*, customers paid the Debtor for certain furniture which the Debtor still possessed at the time of the filing.   *In re Surplus Furniture Liquidators*, 199 B.R. at 138.   Debtor filed a motion to sell the furniture to which the customers objected.  *Id.*   Judge Stocks provided a thorough analysis of how and when title would pass under Article 2 of the Uniform Commercial Code as codified in N.C.G.S. § 25-2-102, *et seq. Id.* at 140.   In sum, as the Debtor still possessed the subject "goods" and there was no agreement in place as to when passage of title would occur, title remained with the Debtor until tendering of the goods.  *Id.* ("Because the objecting customers and Debtor had no agreement as to the passage of title to the furniture, 'title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . and in particular . . . if the contract requires delivery at destination, title passes on tender there.' N.C. Gen. Stat. § 25-2-401(2).").

The current case presents circumstances slightly different from the facts presented in *Surplus*. Unlike the furniture in that case, here, there is no dispute that the Debtor does *not* possess the particular goods, (rifle kits etc.) contracted for by the Plaintiff. The reasoning in *Surplus* should therefore apply *a fortiori*.   The Debtor does not have legal title to the goods promised under any agreement and as such no legal title has passed.   As to the Inventory, while legal title has presumably passed to the Debtor upon delivery to its Albemarle location, the evidence establishes that PSA's funds were not used to *purchase* the Inventory.

**Question 4:** *Is the Present Adversary Proceeding a Bona Fide dispute for purposes of 11 U.S.C. § 363?*

**Answer:  Yes.**

Section 363(f) of the bankruptcy Code provides:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--

>> (1) applicable nonbankruptcy law permits sale of such property and clear of such interest;

>> (2) such entity consents;

>> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

>> (4) such interest is in bona fide dispute; or

>> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of interest.

11 U.S.C. § 363(f).

Section 363(f)(4) authorizes a sale free and clear of any liens, interests, and encumbrances even when such sale involves a "*bona fide* dispute."   The present constructive trust claim is exactly such a dispute.  *See In re DVI, Inc*., 306 B.R. 496, 504 (Bankr. D. Del. 2004) ("Courts have permitted the sale of property free and clear of constructive trust claims or equitable liens, so long as they attach to the proceeds of sale"); *See also In re Balco Equities Ltd*, 323 B.R. 85, 92 (Bankr. S.D. NY. 2005) ("[n]or does the counterclaim asserting a constructive trust require a different outcome, because the constructive trust is itself the subject of a bona fide dispute. Courts have permitted the sale of property free and clear of constructive trust claims or equitable liens, so long as they attach to the proceeds of sale."); *See also In re Byrd*, 2007 Bankr. LEXIS 1764 (Bankr. Md. 2007) ("[t]he subsections of Section 363(f) are written in the disjunctive. The [d]ebtors ignore the

10

plain language of Section 363(f)(4), which allows the sale to be free and clear of an interest if the interest is in bona fide dispute. In this case, it cannot seriously be contested that the [r]espondents' constructive trust claim is not subject to bona fide dispute. Accordingly, even if the Debtors had timely raised their Section 363(f) argument -- which they did not -- their argument would have failed because their constructive trust claim is subject to a bona fide dispute.") (*internal citations omitted*).

The overarching goal of any bankruptcy process is "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period." *In re Grubb & Ellis Co*, 2012 Bankr. LEXIS 1279, 23 (Bankr. S.D.N.Y. 2012). The very purpose of including a *bona fide* dispute provision under section 363(f)(4) of the Bankruptcy Code "is to 'allow the sale of property subject to dispute so that liquidation of the estate's assets need not be delayed while such disputes are being litigated.'" *In re Daufuskie Island Props, LLC*, 2010 Bankr. LEXIS 5533, 58 (Bankr. D.S.C. 2010). *Citing In re Bella Vista Associates, LLC*, Bankruptcy No. 07-18134/JHW, 2007 Bankr. LEXIS 4348, 2007 WL 4555891, * 4 (Bankr. D.N.J. December 18, 2007) *(citing In re Durango Georgia Paper Co*., 336 B.R.594, 597 (Bankr. S.D.Ga. 2005), *quoting In re Gulf States Steel, Inc. of Atlanta*, 285 B.R. 497, 507 (Bankr. N.D.Ala. 2002)).

Assuming *arguendo* that PSA has established a colorable claim for which a constructive trust is an available remedy - which the Debtor disputes - neither the claim, nor the possible constructive trust remedy defeat the Debtor's ability to sell the Inventory, or other asset subject to that dispute. The Bankruptcy Code provides that this Court may permit the sale of property free and clear of a competing party's interest if such interest is in *bona fide* dispute." *In re Daufuskie Island Props, LLC*, 2010 Bankr. LEXIS 5533, 58 (Bankr. D.S.C. 2010). The term "bona fide dispute" is not defined by the Bankruptcy Code, but Courts have concluded that it entails some

sort of meritorious, existing conflict.'" *In re Marko* 2014 Bankr. LEXIS 934, 9 (Bankr. W.D.N.C., March 11, 2014) citing *Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 715 (4th Cir. 1993). When determining whether a *bona fide* dispute exists, courts have found a *bona fide* dispute present when 'there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest." *In re Marko*, 2014 Bankr. LEXIS at 9 (Bankr. W.D.N.C., March 11, 2014) (*citing In re Daufuskie Island Props, LLC*, 431 BR 626 (Bankr. D.S.C. 2010). This standard does not require the Court to resolve the underlying dispute, just determine its existence. *In re Collins*, 180 B.R. 447 (Bankr. E.D.Va. March 31, 1995).

Here, there is no doubt that a *bona fide* dispute exists between the Debtor and PSA over whether PSA has a constructive trust over the Inventory. Notwithstanding evidence that the Debtor is the end purchaser of the Inventory goods from AC Unity, PSA initially asserted that it was their goods in the Container. Now, after completing its inspection and inventory of the goods shipped, PSA cannot, and has admitted as much during the October 20, 2022, credibly contend that the contents are the goods contracted by PSA. The Debtor disputes this assertion, as well as the assertion that any deposit from PSA, provided well over a year ago, was used to purchase the Inventory in question. As of the petition date, PSA and the Debtor were already engaged in an initial dispute over the fate of the Inventory and other assets--the state court litigation. That dispute continues today in the form of the present adversary proceeding.

Further evidence lies in the fact that the Debtor disputes that PSA failed to utilize the proper tracing analysis as employed by *In re Dameron*. 155 F.3d 718, 724 (4th Cir. 1998) ("Hence, pursuant to the lowest intermediate balance rule, if the amount on deposit in the commingled fund has at all times equaled or exceeded the amount of the trust, the trust's funds will be returned in their full amount. Conversely, if the commingled fund has been depleted entirely, the trust is considered

12

lost.  Finally, if the commingled fund has been reduced "below the level of the trust fund but not depleted, the claimant is entitled to the lowest intermediate balance in the account." In no case is the trust permitted to be replenished by deposits made subsequent to the lowest intermediate balance.") (*internal citations omitted*).

Provided that PSA did employ the proper tracing analysis establishing a constructive trust claim, such a position fails to trump the bona fide dispute under section 363(f).  Why might that be?  Well, the answer appears clear to the Debtor and signaled by the Court at the end of the October 20, 2022 hearing, that to prevent the Debtor from selling its Inventory due to an asserted constructive trust claim would continue to hold the Debtor, and this estate, hostage.  Secured creditors fail to even receive that level of control over a Debtor.  As such, the Debtor submits that permitting the Debtor to sell the Inventory over any claim of PSA, which has not been adjudicated by any court, is permissible by the express language of section 363(f)(4).

Lastly, it should be noted that PSA is not without certain protections here.  Section 363(f)(5) is directly on point.  It provides that an "entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of interest."  Here, such monetary relief provided under the Bankruptcy Code is exactly the relief that PSA contracted in Section 6 of the June 16, 2021 *Purchase Agreement* and that certain June 2, 2022 letter written by counsel for PSA in the first place—i.e. monetary damages.[2]   *See In re TWA*, 322 F.3d 283, 288 (3rd Cir. 2003) ("appellants' claims lie within the scope of § 363(f)(5), and therefore, can be extinguished because appellants can be compelled to accept a money satisfaction of their claims.").

---

[2] Section 6(c) provides "[i]n the event this Agreement is terminated pursuant to Paragraph 6(a) by Buyer, Buyer waives any and all claims for damages of any kind or nature against Seller, and as Buyer's sole and exclusive remedy Seller shall return the Buyer's Deposit in accordance with Buyer's written instructions.

## CONCLUSION

For the reasons stated above, the Debtor, Ikon Weapons, LLC, respectfully requests that the Court enter an order DENYING Plaintiff's Motion and providing the Debtor such other and/or further relief as the Court may deem justice requires.

This the 3rd day of November, 2022

**ESSEX RICHARDS, P.A.**

 */s/ John C. Woodman*
John C. Woodman (NC Bar No. 42365)
David R. DiMatteo (NC Bar No. 35254)
1701 South Boulevard
Charlotte, North Carolina 28203
Tel: (704) 377-4300
Fax:  (704) 372-1357
E-mail: jwoodman@essexrichards.com
*Counsel for the Debtor*

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| IKON WEAPONS, LLC | ) | |
| | ) | Case No. 22-10507 |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |
| | ) | |
| PALMETTO STATE ARMORY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | ADV. PRO. NO 22-02021 |
| v. | ) | |
| | ) | |
| IKON WEAPONS, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I, hereby certify that on the 3rd day of November, 2022, I serviced a copy of the foregoing Response by either electronic notice in accordance with the local rules or by depositing the same, enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service, said envelope being addressed as follows:

William P. Miller, Esq.
U.S. Bankruptcy Administrator's Office
(by ECF service)

Ashley S. Rusher, Esq.
Subchapter V Trustee
(by ECF service)

William Walt Petti
Counsel for Plaintiff
Palmetto State Armory, LLC
(by ECF service)

Mitch Willoughby
Counsel for Plaintiff
Palmetto State Armory, LLC
(by ECF service)

Sarah Bruce
U.S. Bankruptcy Administrator's Office
(by ECF service)

This the 3rd day of November, 2022

**ESSEX RICHARDS, P.A.**

 _/s/ John C. Woodman_____
John C. Woodman (NC Bar No. 42365)
1701 South Boulevard
Charlotte, North Carolina 28203
Tel: (704) 377-4300/ Fax:  (704) 372-1357
E-mail: jwoodman@essexrichards.com
*Counsel for the Debtor*

15